Opinion per curiam:
This case was originally before the court on the question of defendant’s liability for delay in furnishing reinforcing steel. William C. Thompson v. United States, 130 C. Cls. 1, rehearing denied February 8, 1955. The court found that defendant had negligently failed to furnish reinforcing steel as required, and caused plaintiff’s work to be delayed 54 days. The case was referred to a commissioner for a determination of the extra costs which plaintiff and his subcontractor incurred because of the 54 days’ delay. On February 8,1955, the commissioner filed his report in which he found that plaintiff’s damages were $4,968 and the damages of the subcontractor Proctor were $5,206.68. After consideration of the record, the commissioner’s report, the exceptions thereto, oral argument and the briefs, we conclude that the commissioner’s findings are supported by the evidence and accordingly adopt them.
Judgment will be entered for plaintiff in the sum of $10,174.68.
It is so ordered.
FINDINGS OP PACT
The court, having considered the evidence, the report of Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:
1. This report is submitted upon the determination of costs occasioned by the delay of the defendant in furnishing the necessary concrete reinforcing steel under contract No. 12r~ 15498, dated August 27,1945, in accordance with the opinion and findings of this court dated October 5,1954.
Work was commenced upon the receipt of notice to proceed October 12,1945. All of the concrete work was completed by July 9, 1946, and the remaining backfill and finish grading were completed August 6,1946.
*934 The delay by the defendant in furnishing reinforcing steel as required extended the period of performance by approximately 54 calendar days. This delay increased the plaintiff’s costs and those of his subcontractor by reason of the retention of equipment on the job and by certain overhead expenses which continued during the period of delay.
2. The prime contractor, plaintiff herein, performed all grading and excavation for structures, which necessarily preceded the concrete work, and the backfill and finish grading after the concrete work had been completed.
The subcontractor, J. D. Proctor, Inc., hereafter referred to as Proctor, performed the concrete work, miscellaneous metal work and constructed the timber structures. Proctor was directly concerned with the fabricating, bending and placing of reinforcing steel, which preceded the pouring of concrete in forms constructed for this purpose.
3. Most of the subcontractor’s equipment used in its work had been acquired especially for this job. This included a batching plant, consisting of a 30-cubic yard 4-compartment bin, weight batcher, elevators and auxiliary equipment costing $10,323.64, and two 3-cubic yard truck mixers costing $10,500. The batching plant was never removed from the job site, and was sold complete July 15,1946, for $11,095.56, and the two truck mixers were sold August 12, 1946, for $7,600.
Proctor also claimed rental of a J. Y. truck mixer at $420 per month for the period February, March, and April 1946. There were no rental invoices or other satisfactory evidence to support this rental. Proctor had acquired the batching plant from Blickle and Cater, another contractor, with the agreement that Proctor would batch, mix and haul whatever remaining concrete would be required to complete the contract. During the period from the time the plant was being removed until April 1946, Proctor batched, mixed and hauled approximately 786 cubic yards of concrete for Blickle and Cater. It required hauling of approximately one mile. This work was performed by Blickle and Cater at their cost experience for delivering concrete to their work. During this period Proctor also mixed and hauled small lots of concrete for other contractors, requiring longer hauls, at actual *935 cost to Proctor. The concrete batched, mixed and hauled for others was approximately 835 cubic yards. It is reasonable to conclude that the rental of an additional truck mixer was required for mixing and hauling concrete for other contractors.
4. Proctor also employed on this job a flat-bed truck with a rear roller apron and winch, a pickup truck and a Plymouth sedan, the total cost of which was $3,295.90; a Gr-D compressor with a Buda engine costing $1,750; two concrete vibrators with auxiliary equipment costing $1,317; and three paving breakers, a wood borer and skilsaw, costing $802.59. The total cost of Proctor’s equipment owned and employed in the work was $27,989.13.
During the periods the aforesaid equipment was employed on this job Proctor charged off estimated depreciation of $4,636.52, amounting to a monthly rate of $681.88, and a daily rate of $22.73. However, other carrying costs, not regularly recorded in books of account for equipment, consist of a pro rata share of major repairs, interest, insurance and taxes.
A reasonable cost of carrying this equipment, without regard to field repairs necessitated by regular use, is $38 a calendar day, or $2,052 for 54 days of delay.
5. Proctor employed a general superintendent at $125 a week throughout the performance period, at a cost of $17,857 a calendar day, and timekeepers at an average cost of $7,703 a calendar day. He also employed a concrete foreman and a carpenter superintendent, each at $115 a week continuously until after all concrete had been poured, at a cost of $16.43 a calendar day for each.
Proctor’s increased cost for supervision occasioned by reason of the delay of. 54 days was $58.42 a day or the sum of $3,154.68.
6. Claim is also made by Proctor for a plant and maintenance foreman and a number of carpenter foremen who were paid on a weekly basis. However, the plant foreman was employed only during the period the batching plant was being erected and thereafter until about April '12, 1946; and carpenter foremen were employed in such numbers as the volume and progress of the work required. These foremen *936 were productive employees and the cost of their services was not substantially affected by the delay in obtaining reinforcing steel.
7. The evidence in support of the prime contractor’s claim was submitted through witnesses of the subcontractor. William C. Thompson issued a power of attorney and notice to the Bureau of Reclamation, Department of the Interior, December 12, 1946, that George C. Faulkner, then secretary-treasurer of J. D. Proctor, Inc., was authorized to prosecute Thompson’s claim for damages.
There was submitted on behalf of William C. Thompson a tabulation of equipment expense on the basis of rentals totaling $7,115 per month or $237.17 a calendar day, and estimated supervisory and general overhead expense of approximately $1,182 per month, or $39.40 a calendar day.
8. Plaintiff Thompson’s job supervisory and general office expense during the entire period of performance averaged approximately $28 a calendar day, and for the 54 days of delay occasioned by the defendant was $1,512.
9. In addition to renting some equipment for use when and as needed on the job, Thompson employed a substantial amount of grading equipment. The grading equipment consisted of one D-4, one D-7, and two D-8 caterpillar tractors with bulldozer blade attachments; also a Woolridge carryall grader, a Woolridge ripper and a No. 12 motor grader. About June 1,1946, a D-6 tractor was substituted for one of the heavier D-8’s.
Other equipment consisted of three compressors, four light service trucks and one grease truck (or lube unit).
Most of this equipment was brought to the job during October and November 1945. No evidence was furnished of the cost of this equipment nor the reasonable value thereof at the time it was employed on this job. Thompson operated several ventures, including the Concrete Materials Company which furnished a substantial amount of the equipment employed on this job.
There is no satisfactory evidence of the dates when individual units of equipment were removed from the job, or whether they were employed on other work during interim periods of slackened work. However, it is reasonable to con- *937 elude that tbe full use of this equipment was proportionately-curtailed along with the delay in placing reinforcing steel.
A reasonable cost to the owner of the equipment described herein was $64 a calendar day, or the sum of $3,456 for 54 days of delay attributed to the defendant.
' 10. By reason of 54 days of delay in performance attributed to the defendant, plaintiff Thompson sustained increased costs of $4,968, and subcontractor Proctor sustained increased costs of $5,206.68.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and it is therefore adjudged and ordered that he recover of and from the United States the sum of ten thousand one hundred seventy-four dollars and sixty-eight cents ($10,174.68).